## MARTIN CLOTHING COMPANY v. H. J. HENLY.

### No. 3273.

**Homestead—Facts Insufficient—Tenant in Common.**—Henly while a merchant and owning a homestead of two acres, bought one-fourth interest in three acres adjoining, and subsequently another fourth interest in the same. Upon this lot was a gin, which was run in the ginning season. Henly becoming insolvent disposed of his stock, and was engaged by his brother as a clerk in his store. A public road was established between the two lots. Henly used the gin lot for fattening his hogs one winter, and watered his cattle and horse when he had one, in a tank in the gin lot. He was head of a family. The lots were in a small village not laid off into blocks and lots. The gin lot was levied upon under attachment at suit of appellant. The trial court held that the gin lot was exempt as a part of the urban homestead. On appeal, *held:* The use by Henly of the lot for penning and fattening hogs, and for watering his cattle and his horse when he had one, at the tank on the lot, if it could in any case be treated as sufficient to impress the lot with the urban homestead character, can not be so treated when the interest of the person so using it is only an undivided one, and when the tenants in common are in possession of and using the premises for an entirely different purpose. A different conclusion might obtain in a rural homestead.

APPEAL from Tarrant.    Tried below before Hon. R. E. BECKHAM. The opinion states the case.

*Wynne & McCart,* for appellant.—1. The evidence showed that the gin house and lot and machinery thereon is no part of appellee's homestead, is on a separate lot of land from his home, bought at a different time, and is not used for homestead purposes in any sense in the meaning of the law, and was situated in the town or village of Bedford.

2.   While a citizen of Texas, and the head of a family, may own and have exempt from forced sale more than one lot of land in a town or village, in order to be so exempted he must use it for homestead purposes.    Pfeiffer & Co. v. McNatt & March, 74 Texas, 640; Wynne v. Hudson, 66 Texas, 1; Hargadene v. Whitfield, 71 Texas, 489; Achilles v. Willis, 81 Texas, 169; Shryock v. Latimer, 57 Texas, 674.

*Ross & Terrell,* for appellee.—1. The land in question was used in connection with the land on which appellee resided, was less than 200 acres, was not in a city or town, and was exempt from execution as a part of appellee's homestead.    Const., art. 16, sec. 51; 60 Texas, 93; 54 Texas, 636; 79 Texas, 588; Posey v. Bass, 77 Texas, 512.

2.   A citizen of the State of Texas who is the head of a family is entitled to a homestead (not in a city or town) of not more than 200 acres of land, and can claim such even though part of said land is owned jointly with another, if used as a homestead; and in a city or town, to a lot or lots not exceeding in value $5000 at the time acquired, that are used as a part of the homestead.    Const., art. 16, sec. 51; Jenkins v. Votz, 54 Texas, 636; Brown v. McLennan, 60 Texas, 43; Brooks v. Chatham, 57 Texas, 31; 42 Texas, 195; 63 Texas, 645; 66 Texas, 350; Pridgen v. Warn, 79 Texas, 588.

HENRY, ASSOCIATE JUSTICE. —Appellant sued for a debt, and caused a writ of attachment to be levied upon the interest of the defendant in a piece of land.    The defendant claimed that the land constituted a part of his homestead, and was therefore not subject to the levy.    The following facts were shown by the evidence:

Henly testified, that at the time the writ of attachment was levied upon his half-interest in the lots he was living in the village of Bedford, which consisted of eight or ten houses built along the public road, and containing twenty or thirty inhabitants; that said town had never been mapped or platted nor laid out into lots and blocks; that the land was not sold by blocks and lots, but by measured parts of the original surveys; that at the time the debt sued on was contracted he was a merchant selling goods at Bedford, and that becoming embarrassed, he made a deed of trust conveying to a trustee his stock of goods and everything he had, except his dwelling house, with a lot of about two

acres upon which it is situated, and the gin property adjoining the same; that after that time his brother bought his old stock; that while defendant was a merchant he owned and still owns a half-interest in the gin property levied upon in this case, which consists of a gin house, machinery, and about three acres of land.   Defendant acquired said property by two purchases.   He first bought a one-fourth and afterward another fourth undivided interest; that before and at the time of levy Ed. Hovenkamp owned the other half-interest in the same; that defendant did not run said gin, but clerked in his brother's store; that defendant is a married man and head of a family, and he lives with his family in his dwelling house adjoining the said gin property, which at the time he purchased it was separated from his dwelling by a fence only; that afterward, with defendant's consent, a public road was established between the gin property and his dwelling; that defendant used the gin lot for watering his cattle in the tank situated thereon; that he watered his horse at the tank when he had one, and used the gin lot the preceding winter for penning and fattening his hogs, he having his hog pen in said gin lot; that he never ran said gin himself nor worked at it; that the defendant claimed the gin property as part of his homestead, which was the reason why he did not include the same in the deed of trust to J. M. Moore; that since plaintiff levied the writ of attachment on said property, he had executed a deed of trust on the same to secure Sanger Brothers, of Dallas, in a debt which he owed them.

The court charged the jury to find for the defendant if they believed that his interest in the lot "was intended for the use of a home, and that the same was so used by him."

The jury found in favor of the defendant.

It is contended by the appellant that the evidence did not authorize the verdict.

The record does not make it entirely clear whether the defendant was occupying a town or a country homestead.   If it was the latter, then we think his interest in the gin house lot should be held to be a part of it and exempt from the attachment.   The charge of the court, however, evidently treated the defendant as the occupant of a town homestead.   The evidence, taken as a whole, leads to the conclusion that the defendant's homestead was properly regarded by the court as urban, and not rural.   It is not pretended that the gin lot was used by the defendant as his place of business.

The exemption, if it exists at all as the case is now presented to us, depends upon the use of the lot in connection with the family residence and for the convenience and comfort of the family.

The main use to which the lot was devoted by its owners had no connection with any homestead purpose.   The use of the lot once for penning and fattening defendant's hogs, and to water his cattle and

his horse when he owned one at a tank on the lot, if they could in any case be treated as sufficient to impress a lot with the homestead character, can not be so treated when the interest of the person so using it is only an undivided one, and when the tenants in common are in possession of and using the premises for an entirely different purpose.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

Delivered March 4, 1892.